IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **CHRISTOPHER SCOTT ASHLEY,** | ) | Case No. 11-04934-TOM-7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **CHRISTOPHER SCOTT ASHLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 12-00079-TOM |
| vs. | ) | |
| | ) | |
| **UNIVERSITY OF ALABAMA HEALTH** | ) | |
| **SERVICES FOUNDATION, PC** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This adversary proceeding came before the Court on August 15, 2012, for a hearing to prove damages following entry of a Default Judgment in favor of Christopher Scott Ashley and against University of Alabama Health Services Foundation, PC. Appearing before the Court were S. Scott Allums, counsel for Christopher Scott Ashley; and Christopher Scott Ashley, Plaintiff/Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(O).[2]
This Court has considered the pleadings, arguments, evidence, testimony, and the law, and finds and concludes as follows.[3]

## **FINDINGS OF FACT**[4]

Christopher Scott Ashley was in a serious car accident in April 2011 that resulted in severe injuries including multiple broken bones and the loss of one leg at the knee. As a result of the accident Mr. Ashley underwent fourteen surgeries and spent over two months in the hospital. During that time he spent 12 days on life support, then time in the critical care and intensive care units. Mr. Ashley also had to undergo physical therapy.

Despite these horrific injuries, multiple surgeries and untold pain and suffering, Mr. Ashley has now managed to return to his job as an IT engineer where he makes around $68,000.00 per year. However, as a consequence of his accident and injuries he was unable to work for an extended period of time and thus lost income. The income loss was compounded when his wife had to stop working

---

[2] 28 U.S.C. §157(b)(2)(A) and (O) provide as follows:

    (b)(2)Core proceedings include, but are not limited to–
    (A) matters concerning the administration of the estate;
    . . .
    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

in order to care for him. Fortunately for Mr. Ashley, health insurance covered most of his medical bills but he was left still owing a debt to the University of Alabama Health Services Foundation, PC ("University Health") in the approximate amount of $35,000.00.

Due to the financial hardship resulting from the accident Mr. Ashley and his wife filed a chapter 7 bankruptcy case on September 30, 2012. The original schedules, and amended schedules filed October 26, 2011, listed numerous medical and other debts, including the debt to University Health. While the bankruptcy case was pending University Health ceased sending bills to Mr. Ashley, and according to the Mr. Ashley's testimony at the hearing on damages, University Health made no efforts to contact him or otherwise attempt to collect the debt.

On January 10, 2012, an Order of Discharge was entered as to Mr. Ashley and his wife. Upon the entry of the Discharge Order Mr. Ashley and his wife should have been able to put their financial troubles caused by the accident behind them. Apparently University Health thought otherwise as it soon thereafter began collection efforts as to the pre-petition debt. The first post-discharge bill received by Mr. Ashley was dated February 27, 2012. University Health continued to send bills in March, April, May and June of 2012 in an attempt to collect the $35,000. In addition to sending the bills, a representative of University Health called Mr. Ashley in February and again in March regarding the debt. On each of these occasions Mr. Ashley informed the representative of his bankruptcy case filing, as well as the name of his bankruptcy attorney.

Mr. Ashley testified that he thought the bankruptcy had eliminated his obligation to pay the remaining medical bills relating to the accident. As a result of University Health's collection attempts Mr. Ashley became worried and upset, fearing he would have to pay the $35,000 bill despite having gone through the bankruptcy. By this time Mr. Ashley and his wife had experienced

3

marital troubles and were going through a divorce. Although the collection attempts by University Health did not alone cause the divorce, Mr. Ashley testified that the stress caused by the collection attempts was a factor in his and his wife's decision to divorce.

In addition to taking an emotional toll on Mr. Ashley these collection efforts have caused him financial hardship. Mr. Ashley testified that he again had to miss work, this time not because of a physical inability to work but the need to contend with University Health's collection efforts. On numerous occasions Mr. Ashley has missed work to gather information for and meet with his attorney, as well as to appear in Court. Mr. Ashley has also incurred legal fees and expenses that he would not have otherwise incurred. Counsel for Mr. Ashley informed the Court on the record that prior to the hearing date he had expended 11.65 hours working on this adversary proceeding. On the morning of the hearing counsel worked on this adversary proceeding for another 2.5 hours, from 9:30 a.m. when he met with Mr. Ashley, through the time Court was concluded at approximately noon. Counsel has expended $11.40 for certified mail in this case.

## **CONCLUSIONS OF LAW**

### **I. Violation of the Discharge Injunction**

The Bankruptcy Code provides protection for a debtor upon the debtor's receiving a discharge, which "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2).[5] When a debtor receives a discharge, the discharge injunction replaces and operates similarly to the automatic stay. *See Matthews v. United States (In re Matthews)*, 184 B.R. 594, 599 (Bankr. S.D. Ala. 1995); *see also*

---

[5] Unless otherwise noted all "Section" or "§" references are to a section or other subdivision of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

4

*McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 822 - 23 (Bankr. N.D. Ohio 2010).

Although § 524(a)(2) does not provide for monetary relief upon a violation of the injunction, courts have held that such a violation "authorizes a court to hold a violating creditor in contempt and award attorneys fees." *Matthews*, 184 B.R. at 599 (*citing In re Elias*, 98 B.R. 332 (N.D. Ill. 1989) and *Kolb v. United States (In re Kolb)*, 137 B.R. 29 (N.D. Ill. 1992)). The Eleventh Circuit, when determining a creditor's liability under § 524(a)(2), has held that a court should look to its statutory contempt powers found in § 105(a).[6] *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996); *McTyeire v. Hunt (In re McTyeire)*, 357 B.R. 898, 903 (Bankr. M.D. Ga. 2006). This statute authorizes the court "'to award monetary and other forms of relief.'" *Hardy*, 97 F.3d at 1389-90 (*quoting Jove Eng'g, Inc. v. I.R.S. (In re Jove)*, 92 F.3d 1539, 1553 - 54 (11th Cir. 1996)).

In determining whether a to hold a creditor in contemp for violating the discharge injunction a court must first consider if the violation was willful. *Hardy*, 97 F.3d at 1390. It is not the creditor's subjective beliefs or intent that is important. Rather, the focus is on whether the creditor's conduct complied - or did not comply - with the pertinent order. *Id*. *See also Caffey v. Russell (In re Caffey)*, 384 B.R. 297, 307 (Bankr. S.D. Ala. 2008) ("There is no specific intent requirement for a "willful" violation . . . ."). The Eleventh Circuit has articulated a two-part test for determining whether a creditor willfully violated the automatic stay that is also applicable to determining whether a creditor willfully violated the discharge injunction. *Id*. *See also Jove*, 92 F.3d at 1555. A creditor's actions will be considered "willful" if the creditor "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." *Jove*, 92 F.3d at 1555 - 56. In other

---

[6] 11 U.S.C. § 105(a) provides in part:
    The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

5

Case 12-00079-TOM    Doc 13    Filed 09/06/12    Entered 09/06/12 15:40:49    Desc Main
Document    Page 5 of 9

words a creditor acts willfully when it, with knowledge of a bankruptcy petition, acts deliberately in a manner that violates the stay, even if his actions are not intentionally meant to violate the stay. *Caffey*, 384 B.R. at 307; *see also In re Parker*, 279 B.R. 596, 603 (Bankr. S.D. Ala. 2002); *Spinner v. Cash In A Hurry, LLC (In re Spinner)*, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008) (Violation of the automatic stay is presumed deliberate if the creditor has actual notice of the bankruptcy.). Upon obtaining knowledge of the bankruptcy, the creditor bears the burden of not violating the automatic stay. *Caffey*, 384 B.R. at 307.

There is no question that University Health violated the discharge injunction by attempting to collect a debt discharged in bankruptcy. The question this Court must consider is whether the violation was willful according to the Eleventh Circuit's two-part test. The Court notes that Mr. Ashley scheduled the debt to University Health, and University Health presumably received the notices and other documents mailed by the Court throughout the case, including a copy of the Order of Discharge. This is a reasonable presumption since University Health stopped sending bills while the case was pending and only resumed after the Order of Discharge was entered and the bankruptcy case closed. It appears University Health disregarded the entry of the discharge and proceeded to deliberately continue its collection efforts by mailing bills beginning in February 2012 and continuing for several months thereafter. Besides mailing bills, University Health placed at least two phone calls to Mr. Ashley attempting to collect the debt. During each of the phone calls Mr. Ashley provided University Health verbal notice of his bankruptcy case as well the contact information for his attorney.

It is clear to this Court that University Health knew about the bankruptcy filing due to the mailed bankruptcy notices from this Court (and University Health's coinciding cessation of

6

collection efforts), as well as the verbal notices of bankruptcy provided by either Mr. Ashley or his wife when University Health made phone calls. Despite this knowledge, University Health chose to disregard bankruptcy law and this Court's orders by attempting to collect the debt anyway. University Health continued to show its disregard for the laws and this Court's authority by failing to respond to the Complaint, and by neglecting to attend either the pretrial conference or the hearing on damages. Based upon Mr. Ashley's testimony and the evidence presented at the final hearing, this Court must conclude that University Health possessed full knowledge of the bankruptcy case and thus its continued collection efforts were deliberate and willful violations of the discharge injunction.

## II. Damages

### A. Actual Damages

Based upon the foregoing, the Court finds that the continued efforts by University Health to collect on this debt were done in total and complete disregard for the discharge injunction and in willful violation of 11 U.S.C. § 524(a)(2). Mr. Ashley is therefore entitled to actual damages, including attorney's fees, pursuant to 11 U.S.C. § 105(a) due to the violation of the discharge injunction and the resulting emotional distress suffered by Mr. Ashley. *See Caffey*, 384 B.R. at 309 ("emotional damages qualify as 'actual damages'"). The Court finds that Mr. Ashley suffered actual damages including $500.00 in lost wages (12 hours of work at $33.00 an hour) plus $3,000.00 for the distress and worry that the continued collection efforts of University Health caused him. The Court further awards costs of $11.40 for certified mail and attorney's fees of $3,500.00 (14 hours

at $250.00 per hour).[7]

### B. Punitive Damages

Section 105(a) enables this Court to enter an order awarding punitive damages, so long as the order is "'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." *See Hardy*, 97 F.3d at 1389-90 (*citing Jove*, 92 F.3d at 1553-54). University Health possessed actual knowledge of Mr. Ashley's bankruptcy soon after the case was filed, all the way through the case and following the discharge. At no point did University Health regard or respect the discharge injunction. The discharge injunction is at the heart of the Bankruptcy Code's protective parameters for debtors, and such blatant disregard for the law as displayed by University Health will not be condoned by this Court. Mr. Ashley was in an accident and suffered horrific injuries in the Spring of 2011. The resulting injuries, time off from work to recover, and bills that were not paid by insurance forced the Mr. Ashley and his wife into bankruptcy. The bankruptcy should have provided them with relief from collection efforts and from the overwhelming worry that comes with large medical bills that they could not possibly afford to pay. Mr. Ashley is lucky to be alive and back at his job. He has suffered a great deal both physically and mentally, and he is trying to resume his life. University Health's conduct following entry of the discharge was wrongful and harmful. Further, given the size of University Health, the number of cases filed that include University Health as a creditor, and the potential in this community for abuse of the discharge provisions by University Health, and in an effort to deter similar conduct by University Health in other cases, the Court finds

---

[7] Counsel for Mr. Ashley presented no evidence with regard to his hourly rate. However, in the Eleventh Circuit, "[t]he determination of reasonable attorneys' fees is left to the sound discretion of the trial judge." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 (11th Cir. 1983). Based on the numerous fee applications that have been reviewed by this Court, the Court concludes that $250 per hour is a reasonable rate in this case.

8

that Mr. Ashley is entitled to punitive damages in the amount of $5,000.00. Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED** that damages are awarded against University of Alabama Health Services Foundation PC and in favor of the Debtor, Christopher Scott Ashley, in the amount of $12,011.40, which includes the attorney fee of $3,500.00, expenses of $11.40, actual damages of $3,500 and punitive damages of $5,000.00.

Dated: September 6, 2012

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

xc: S. Scott Allums, attorney for Debtor
 Christopher Scott Ashley, Debtor